IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CR-42-D
No. 5:25-CV-218-D

| | | |
|---|---|---|
| BRETT ANDREW LOCKLEAR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On April 22, 2025, Brett Andrew Locklear ("Locklear" or "petitioner") moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 156-month sentence for distribution of child pornography and possession of child pornography [D.E. 98] and filed a supporting memorandum [D.E. 98-1]. That same day, Locklear moved pro se to expand the record to include Locklear's declaration attached to the motion [D.E. 99]. On June 5, 2026, the United States moved to dismiss Locklear's section 2255 petition for failure to state a claim upon which relief can be granted [D.E. 106] and filed a supporting memorandum [D.E. 107]. See Fed. R. Civ. P. 12(b)(6). On June 8, 2026, the court notified Locklear of the deadline to respond [D.E. 108]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On August 14, 2026, Locklear, through counsel, responded [D.E. 112] and filed a supporting memorandum [D.E. 113] and declarations [D.E. 113-1, 113-2, 113-3]. As explained below, the court grants Locklear's motion to expand the record, grants the United States' motion to dismiss, dismisses Locklear's section 2255 petition, and denies a certificate of appealability.

I.

On October 20, 2022, without a written plea agreement, Locklear pleaded guilty to five counts of distribution of child pornography and one count of possession of child pornography. See [D.E. 29]; Rule 11 Transcript ("Rule 11 Tr.") [D.E. 52] 1, 13, 26–27; [D.E. 98] 1. At the Rule 11 hearing, Locklear and the court engaged in a comprehensive Rule 11 colloquy. The court confirmed Locklear's competency, the charges, the penalties, and Locklear's constitutional rights. See Rule 11 Tr. 3–18, 20–22. The court also confirmed that Locklear was "completely and fully satisfied with the representation [Locklear] received." Id. at 21.

The court confirmed that Locklear had "not entered into a plea agreement with the United States." Id. at 19. Locklear confirmed that the United States made plea agreement offers, Locklear's lawyer conveyed the plea agreement offers to Locklear, and Locklear declined the plea agreement offers. See id. Counsel for both parties confirmed that there would be no "benefit to allowing additional time for plea discussions." Id. at 19–20. Locklear also confirmed that no one forced or threatened him to plead guilty, and no one made any promises to Locklear to convince him to plead guilty. See id. at 21.

The court discussed the sentencing process with Locklear. Locklear confirmed that he understood that any estimate his lawyer made about Locklear's sentence did not bind the court. See id. at 18. The court explained that at the sentencing hearing, the court would calculate an advisory guideline range and would consider the advisory guideline range, any departure motions, any variance motions, and the 18 U.S.C. § 3553(a) factors in imposing a sentence. See id. Locklear confirmed that he understood. See id. at 19.

The court explained the elements of the distribution of child pornography charges and the possession of child pornography charge to Locklear. See id. at 21–22. The United States then offered a factual basis for the guilty plea. See id. at 23–25. Locklear then pleaded guilty to the charges, and the court accepted Locklear's guilty plea and adjudged him guilty of distributing and possessing child pornography. See id. at 26–27.

On March 16, 2023, Locklear filed a sentencing memorandum and moved for a downward variance. See [D.E. 41]. Locklear also submitted letters from doctors, a letter from a clinical social worker, and character references. See [D.E. 41-1, 41-2, 41-3, 41-4].

On March 21, 2023, the court held Locklear's sentencing hearing. See [D.E. 45]; Sentencing Transcript ("Sent. Tr.") [D.E. 53]. The court confirmed Locklear's competency and that Locklear pleaded guilty without a written plea agreement. See Sent. Tr. 3. The court also confirmed that neither party had objections to the Presentence Investigation Report and calculated Locklear's advisory guideline range as 151 to 188 months' imprisonment. See id. at 4–5. The court then heard arguments about the section 3553(a) factors and the motion for a downward variance from counsel. See id. at 5–8, 13–28. The court also heard Locklear allocute and a victim allocute. See id. at 8–13. After considering all relevant factors under section 3553(a), counsels' arguments, Locklear's allocution, and the victim's allocution, the court denied Locklear's motion for a downward variance and sentenced Locklear to 156 months' imprisonment. See id. at 28–34.

That same day, the court issued its judgment. See [D.E. 47]. On March 31, 2023, Locklear appealed his sentence. See [D.E. 46]. On appeal, Locklear argued that this court "imposed a procedurally unreasonable sentence because [this court] failed to address his nonfrivolous mitigation arguments related to his mental health and properly explain its rejection of [Locklear's]

motion for a variance." United States v. Locklear, No 23-4245, 2024 WL 2815146, at *1 (4th Cir. June 3, 2024) (per curiam) (unpublished).

On June 3, 2024, the United States Court of Appeals for the Fourth Circuit affirmed Locklear's sentence. See id. at *2. The Fourth Circuit found that this court "sufficiently explained its rejection of Locklear's request for a variance and its reasons for sentencing him to the lower end of [Locklear's] guideline range." Id. at *1.

On April 22, 2025, Locklear moved under section 2255 to vacate, set aside, or correct his sentence. See [D.E. 98]. Locklear argues that his counsel rendered ineffective assistance of counsel by (1) failing to convey to Locklear the United States' plea agreement offers and (2) advising Locklear to plead guilty without a plea agreement. See [D.E. 98-1] 10–11; [D.E. 113] 7–8. Locklear also asks the court to hold an evidentiary hearing. See [D.E. 113] 17–18. That same day, Locklear moved to expand the record to include Locklear's declaration attached to the motion [D.E. 99]. Locklear did not attach a declaration to the motion. To the extent that Locklear refers to the declarations filed on August 14, 2026, the court grants the motion.

On June 5, 2026, the United States moved to dismiss Locklear's section 2255 petition for failure to state a claim. See [D.E. 106]. On August 14, 2026, Locklear responded in opposition. See [D.E. 112, 113].

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual sufficiency. Fed. R. Civ. P. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir.

2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (cleaned up). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Locklear must plausibly allege that his attorney's performance fell below an objective standard of

reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. As for performance, a party must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citation omitted). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (cleaned up). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (cleaned up).

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 466 U.S. at 691–96. A person does so by showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional 'prejudice' requirement" on the "conclusion that 'an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Harrington, 562 U.S. at 111–12 (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Id. at 112 (citation omitted).

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (quotations omitted); see Lee, 582 U.S. at 364–65. "[S]uch an individual 'must convince the court' that such a decision 'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 582 U.S. at 368–69 (cleaned up). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Id. at 369. "Judges instead should look to the contemporaneous evidence to substantiate a defendant's expresses preferences." Id.

"Requiring a showing of prejudice from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel [serves] the fundamental interest in the finality of guilty pleas . . . ." Hill, 474 U.S. at 58 (quotations omitted). "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." Id. (citation omitted). "The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas." Id. (citation omitted).

"[I]f a defendant alleges that he has accepted a government plea offer based on the erroneous advice of counsel, but entered that plea only after the misadvice was corrected by the trial court at the Rule 11 hearing, then he will not be able to show the necessary causal link between counsel's error and his decision to plead guilty." United States v. Mayhew, 995 F.3d 171, 179–80 (4th Cir. 2021) (cleaned up); see United States v. Yelizarov, 140 F.4th 597, 604–05 (4th Cir. 2025), cert. denied, 146 S. Ct. 345 (2025); United States v. Akande, 956 F.3d 257, 262–63 (4th Cir. 2020); United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995). "Generally, a court should dismiss a claim in a [section] 2255 motion that contradicts a petitioner's sworn statements made during a Rule 11 plea colloquy." Yelizarov, 140 F.4th at 605; see United States v. Lemaster, 403 F.3d 216, 219–22 (4th Cir. 2005).

III.

A.

Locklear alleges deficient performance because his counsel did not convey to Locklear plea agreement offers the United States made. See [D.E. 98-1] 11; [D.E. 113] 7. At Locklear's

Rule 11 hearing, the court confirmed Locklear's competency. See Rule 11 Tr. 14–16. Locklear's lawyer told the court that the United States made plea agreement offers to Locklear, that Locklear's lawyer conveyed the offers to Locklear, and that Locklear "decline[d] to accept those offers." Id. at 19. The court then asked Locklear, "[I]s that correct?" Id. Locklear responded, "Yes, your Honor." Id.

Locklear's sworn statements at his Rule 11 hearing bind him. See, e.g., Blackledge, 431 U.S. at 74–75; Yelizarov, 140 F.4th at 605; United States v. Moussaoui, 591 F.3d 263, 295–99 (4th Cir. 2010); Lemaster, 403 F.3d at 221–23. Those statements defeat Locklear's claim that his lawyer did not convey the United States' plea agreement offers to him.

In opposition, Locklear argues that his lawyer told him the United States had not presented any plea agreement offers and that Locklear is cognitively impaired. See [D.E. 113] 11–14. Locklear's evidence is sworn declarations from himself, Locklear's brother, and Locklear's sister. See [D.E. 113-1, 113-2, 113-3]. Locklear argues that the declarations undermine Locklear's sworn statements at his Rule 11 hearing. See [D.E. 113] 16; cf. Blackledge, 431 U.S. at 74–75; Yelizarov, 140 F.4th at 605; Moussaoui, 591 F.3d at 295–99; Lemaster, 403 F.3d at 221–22.

The declarations "contain inconsistencies, and therefore fail to" plausibly establish that Locklear's lawyer never conveyed the United States' plea agreement offers to Locklear. Herrera v. Collins, 506 U.S. 390, 418 (1993). Locklear's family members attended Locklear's Rule 11 hearing. See [D.E. 113-2] ¶ 7; [D.E. 113-3] ¶ 15. During Locklear's Rule 11 hearing, Locklear's lawyer said that the United States had made plea agreement offers to Locklear, and Locklear declined the offers. See Rule 11 Tr. 19. Locklear confirmed his lawyer's representations. See id. Locklear's family members also attended Locklear's sentencing hearing. See [D.E. 113-2] ¶ 12; [D.E. 113-3] ¶ 20. During the sentencing hearing, Locklear "reaffirmed his assent to the [guilty

plea].” Lemaster, 403 F.3d at 222; see Sent. Tr. 2–4. Notably, Locklear and his family members made the declarations over three years after the court sentenced Locklear, and they conflict with Locklear's statements under oath. See Herrera, 506 U.S. at 417–18; cf. Taylor v. Illinois, 484 U.S. 400, 414 (1988). Here, Locklear fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91.

Alternatively, even if Locklear's lawyer did not convey the United States' plea agreement offers to Locklear, Locklear must plausibly allege that he would have accepted a plea agreement, the United States would have gone through with the plea agreement, and the court would have accepted the plea agreement. See Frye, 566 U.S. at 147. Locklear does not plausibly allege that the United States would have gone through with the unidentified plea agreement or that the court would have accepted the unidentified plea agreement. Locklear's only evidence that he would have accepted a plea agreement is the conclusory statement that had Locklear known about the plea agreements and “received competent advice . . . there exists a reasonable probability that [Locklear] would have accepted” a plea agreement. [D.E. 98-1] 15; see United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004) (“[C]onclusory allegations are insufficient to establish the requisite prejudice under Strickland.”). Moreover, the court cured any deficiency at the Rule 11 hearing when the court asked Locklear about the United States' plea agreement offers, and he swore that he was aware of them and rejected them. See Rule 11 Tr. 19; Yelizarov, 140 F.4th at 604–05; Mayhew, 995 F.3d at 179–80; Akande, 956 F.3d at 262–63; Foster, 68 F.3d at 88. Thus, Locklear fails to plausibly allege prejudice. See Frye, 566 U.S. at 147; Strickland, 466 U.S. at 687–97.

B.

Locklear alleges deficient performance because Locklear's lawyer advised Locklear to plead guilty without a written plea agreement. See [D.E. 98-1] 10; [D.E. 113] 7. Locklear's lawyer's advice to enter an open guilty plea, however, did not fall below "an objective standard of reasonableness." Strickland, 466 U.S. at 688; see, e.g., United States v. Cronic, 466 U.S. 648, 656 n.19 (1984); Brown v. Doe, 2 F.3d 1236, 1246 (2d Cir. 1993); Griffin v. United States, No. 7:03-CR-103, 2011 WL 1743835, at *3 (E.D.N.C. May 3, 2011) (unpublished). Locklear's lawyer told Locklear that the court "was known to be a harsh sentencer." [D.E. 113-1] 2. Thus, Locklear's lawyer told Locklear to plead guilty to preserve Locklear's ability to appeal his case in the event of a long sentence. See id. If Locklear pleaded guilty with a written plea agreement, Locklear would have had to waive his right to appeal. If the court imposed a long sentence, the Fourth Circuit could have enforced the appellate waiver against Locklear. See, e.g., United States v. Copeland, 707 F.3d 522, 529–30 (4th Cir. 2013); United States v. Thornsbury, 670 F.3d 532, 537–540 (4th Cir. 2012). Locklear's lawyer also told Locklear that "if the sentencing proceedings went poorly" the court might impose "a sentence of up to thirteen years," which is what the court ultimately imposed on Locklear at his sentencing hearing. [D.E. 131-1] 2; see Sent. Tr. 34. A thirteen-year sentence would increase the likelihood that Locklear would want to appeal his sentence. Thus, Locklear fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91.

Alternatively, Locklear does not plausibly allege that if his lawyer advised him to pursue a plea agreement, Locklear would have accepted the unidentified plea agreement the United States offered, the United States would have presented the unidentified plea agreement to the court, and

the court would have accepted the unidentified plea agreement. See Frye, 566 U.S. at 147. Thus, Locklear fails to plausibly allege prejudice. See id.; Strickland, 466 U.S. at 687–97.

Locklear also asks the court to hold an evidentiary hearing. See [D.E. 113] 17–18. Section 2255 requires the court to "grant a prompt hearing" "[u]nless the motion and the files and records of the case conclusively show that a prisoner is entitled to no relief." 28 U.S.C. § 2255(b); see United States v. Flood, 188 F.4th 250, 257–58 (4th Cir. 2026); United States v. Hashimi, 110 F.4th 621, 627 (4th Cir. 2024). After reviewing the motion and files and records in the case, the court finds that the record conclusively shows that Locklear is not entitled to relief. See Flood, 188 F.4th at 257–58. Thus, the court denies Locklear's request for an evidentiary hearing.

C.

The court finds that reasonable jurists would not find the court's treatment of Locklear's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Thus, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

IV.

In sum, the court GRANTS petitioner's motion to expand the record to include the petitioner's declarations [D.E. 99], GRANTS respondent's motion to dismiss [D.E. 106], DISMISSES petitioner's section 2255 petition [D.E. 98], and DENIES a certificate of appealability.

SO ORDERED. This 4 day of November, 2026.

JAMES C. DEVER III
United States District Judge